## SEAMAN *vs.* REEVE.

Where stock is pledged as security for a loan of money, the lender agreeing that he will give to the borrower thirty days' notice to redeem said stock, after the note becomes due and before a transfer thereof, and in case of a sale of the stock, to pay the borrower the balance, after satisfying the note, and $20 for expenses, this is a valid agreement, which may be enforced between the parties; although it will not affect the legality of a sale of the stock, made by the pledgee. A *bona fide* purchaser from him will be protected. S. B. STRONG, J. dissented.

An action by the pledgor, to recover damages of the pledgee, for selling the stock at private sale and without notice to the pledgor, is not an action for trover and conversion, but is an action upon *contract*, and will admit of a *set-off.*

THIS was an appeal by the plaintiff, from a judgment rendered at a special term. The suit was commenced on the 23d day of August, 1851.

The complaint set forth that on the 4th September, 1849, the plaintiff pledged to the defendant six shares New-York and Erie railroad stock as a security for a loan of $200; that the defendant wrongfully sold the same afterwards at private sale, without notice to the plaintiff, and the plaintiff demanded damages against the defendant as bailee, for the sale and conversion thereof, in the sum of six hundred dollars with interest from June 15th, 1847, the time of such sale. The defendant's answer admitted the pledging of the stock, and the sale of it by him; but denied that it was wrongful, or without notice to the plaintiff, and denied the value of the stock as claimed by the plaintiff, and also set up a decree of the surrogate of the county of Orange against the plaintiff for $427,37, and a promissory note against the plaintiff for $530, as a set-off. The reply denied all the new matter of the answer; denied the existence of said decree; set up the statute of limitations to the said decree and note; denied that such decree was a legal set-off; averred payment of both the decree and the note, and denied that the defendant was the owner and holder of them. The cause was tried at the Orange circuit, on the 4th day of February, 1852, before Justice Brown, without a jury. Moses Swezey testified, on the part of the plaintiff, that on the 4th day of September, 1847, he was

present at an agreement between the parties. Reeve loaned Seaman $200 on Seaman's note, payable in 6 months, and Seaman assigned to Reeve six shares New-York and Erie railroad consolidated stock for $100 each, as collateral security. A written memorandum of agreement was made and signed, of which the following is a copy: "This is to certify that John Seaman has this day transferred to me six shares New-York and Erie consolidated stock as collateral security for two hundred dollars, this day lent by me to him upon his note. And I hereby agree to give him thirty days' notice to redeem the said stock after the said note becomes due, and before transfer thereof; and in case of sale of said stock, to pay the said Seaman the overplus of the money received therefor, after paying the said two hundred dollars, with interest, and twenty dollars for my reasonable expenses. And it is hereby agreed that a notice, verbal or written, to Moses Swezey, shall be deemed sufficient within the meaning of the above agreement.

Dated Goshen, Sept. 4, 1847.        JAMES C. REEVE.
                                     JOHN SEAMAN."

"Notice that the loan within mentioned is wanted, served on me the 7th day of March, 1848.        MOSES SWEZEY."
Reeve agreed to give Seaman 30 days' notice after said note became due, before selling the stock; and agreed to pay Seaman the balance after paying said note, interest, and $20 for expenses. Seaman agreed that notice to witness should be sufficient. In the spring of 1848, Reeve gave witness notice that the note must be paid; witness wrote to Seaman; a short time afterwards Reeve told witness that he was going to New-York and would see Seaman. Afterwards, witness thought in April, 1848, he saw Reeve again; Reeve said he had been to New-York and had seen Seaman; witness asked Reeve what had been done about the stock; Reeve said Seaman had not paid the note, that he and Seaman had made an arrangement by which he, Reeve, was to hold the stock a longer time as he had held it before. In the summer of 1848, called on the defendant at the request of the plaintiff; Reeve said he had sold the stock to Elizabeth Hughes, for the $200 and interest; witness told him he called

for the overplus ; told him Seaman could recover; he said Mrs. Hughes had indemnified him. Witness commenced a suit for the plaintiff against defendant for such overplus, which was discontinued before this action was commenced. And on his cross-examination he testified, that the notice, a copy of which is hereinbefore set forth, was served on him at the time of its date. Testimony was given as to the value of the stock. On the part of the defendant a certified copy of a decree of the surrogate of the county of Orange, against the plaintiff as general guardian of Josiah Mead, for $427,37, duly and legally made and entered on the 9th day of July, 1844, and duly assigned by said Josiah Mead to Elizabeth Hughes on the 3d of October, 1848, and by her duly assigned to the defendant on the day last aforesaid, was introduced and read in evidence. The plaintiff's counsel objected to the decree, for the following reasons : (1.) That the action was in tort, and no set-off could be allowed. (2.) That the decree was made and entered more than six years before the commencement of this action. (3.) That the decree of a *surrogate's* court is not the subject of a set-off. The court reserved the cause for further argument ; and it was brought on to be heard at a special term of the said court, at Newburgh, before the said justice, on the 4th day of May, 1852, who, after hearing the argument of counsel, decided the action against the plaintiff, and judgment was thereupon entered against him in favor of the defendant, for $343,03, besides costs.

*M. Swezey,* for the appellant.

*B. F. Dunning,* for the respondent.

BARCULO, P. J. The transfer of the stock to the defendant gave him the authority to sell and dispose of it. This right is incidental to the absolute holder of such securities. There can be no doubt that a bona fide purchaser from him would be protected. The defendant, however, agreed that he would give the plaintiff 30 days' notice before selling the stock, and pay him the balance after satisfying the note and $20 expenses. This is a

valid agreement, which may be enforced between the parties, although it cannot affect the legality of the sale. All that the plaintiff stipulated for in the agreement, was to have the stock bring its full value and be applied in payment of the debt. If the defendant has not sold it in such a manner, and accounted for the proceeds, he is liable therefor upon his contract, and must respond in damages. This is what he has been made to do at the special term, as I understand the decision. To call this a case of trover and conversion is, in my judgment, a misapplication of terms.

This view of the case also disposes of the other objection. For if this is deemed an action upon contract, the defendant could set off the decree of the surrogate. (*Dubois* v. *Dubois*, 6 *Cowen*, 494.) The judgment must be affirmed.

BROWN, J. concurred.

S. B. STRONG, J. dissented.

Judgment affirmed.

[KINGS GENERAL TERM, January 3, 1853. *Barculo, Brown* and *S. B. Strong,* Justices.]